CHARLES HENRY BUTTERFIELD V. STATE.

No. 29,899. October 29, 1958.
Appellant's Motion for Rehearing Overruled December 3, 1958.

*Werner A. Gohmert* and *John C. Mullen,* both of Alice, for appellant.

*Leon Douglas,* State's Attorney, Austin, for the state.

WOODLEY, Judge.

The offense is driving an automobile upon a public highway while intoxicated; the punishment, thirty days in jail and a fine of $50.

It is conceded by appellant, in his brief, that the evidence is sufficient to sustain the conviction. It will not be discussed further than to say that, in addition to opinion evidence of the arresting officer and other witnesses for the State, an analysis of a sample of blood taken from appellant showed that it contained "3.5 milligrams of alcohol per c.c. of blood."

The sole claim of error is predicated upon the trial court's failure to submit as a defense that appellant drove his automobile upon a public highway because of necessity; that is, if the jury should find that he drove his automobile upon a public highway while intoxicated, but further found that he did so only for the purpose of seeking medical treatment for a serious head injury which he had sustained in his apartment, they should acquit.

We are aware of no such defense and decline to hold that an intoxicated driver of an automobile upon a public highway commits no offense if it be shown that a necessity existed or that it appeared to him to be necessary that he make the journey.

The judgment is affirmed.

DAVIDSON, Judge, dissenting.

Appellant was arrested about 2:30 o'clock, a.m., when the automobile he was driving crossed over the street, after striking the curbing, and ran into a parking lot and guard rail.

Appellant insisted that he was not intoxicated and that the accident occurred as a result of his weakened condition from loss of blood.

The arresting officer testified:

"He had a head injury which was bleeding, and he said someone had hit him. I had occasion to observe his speech and actions, and his speech was very incoherent, and he talked in a mumbling manner. He was very unsteady on his feet, and I could smell a strong odor of alcohol on his breath. In my opinion, the boy was drunk, very drunk. The boy told me he was going to the hospital and had asked directions at some filling station, so I took the boy to Royal Bates Humble Service Station and verified his story with the attendant there. Then I took him to the hospital for a blood test. He gave his consent for the blood test * * *."

According to appellant's testimony and that of one of his companions, corroborated in certain respects by others, he and the companion had engaged in drinking the early part of the night and the companion carried him to his (appellant's) place of residence, a garage apartment, about 1:45 o'clock a.m. As appellant entered his bedroom he received a lick on his head which rendered him unconscious. When he awoke, there was a pool of blood where he was lying on the floor. He realized he was bleeding from the wound and that he required immediate medical attention. He had no telephone in his apartment, and he lived alone. He decided to try to get to the hospital and was on his way when the wreck occurred as a result of his having fainted while driving.

Under such circumstances, appellant, by exception to the charge as well as by special requested charge, insisted that he was entitled to have the jury instructed to the effect that if he was driving his automobile in search of medical attention for his injury, which services were deemed necessary for that purpose, he would not be guilty.

The trial court refused to so instruct the jury.

The law has long recognized that a criminal offense may be excused if commited under necessity. 22 C.J.S., Criminal Law, Sec. 49, p. 115; Wharton's Criminal Law, Vol. 1, Sec. 410.

Our law of self-defense in a murder case arises out of that necessity for self-preservation.

Other jurisdictions recognize such a defense. Chesapeake RR. Co. v. Commonwealth, 119 Ky. 519-527, 84 S.W. 556; Browning v. State, 13 So. 2d 54 (Ala.).

In the Browning case, one of reckless driving, the defense was recognized that such driving was claimed necessary in order to escape an unlawful arrest and from fear of injury by those attempting to make the arrest.

Here, appellant, though drunk or intoxicated in his own home according to the state's contention, was violating no law. It is not unlawful for one to be drunk or intoxicated in his own home.

According to his testimony, he was either assaulted or struck by some object, as a result of which he was injured, and the injury, together with the loss of blood, required his receiving immediate medical attention. He had no way to secure that mdeical aid except to go in quest of it by driving an automobile upon a public highway.

Appellant did not ask that the jury be instructed to return a verdict of not guilty under those facts. All that he asked was that the question be submitted to the jury for its consideration and if it believed that· it was necessary, under the circumstances, for him to drive an automobile upon a public highway he would not be guilty of driving a motor vehicle while intoxicated upon a public highway.

My brethren refuse to permit a jury to pass upon that question, saying that no necessity could arise that might authorize one to drive a motor vehicle upon a public highway while merely under the influence of intoxicating liquor.

Suppose that, instead of being injured himself, his baby— if he had one—had accidentally swallowed poison or his wife had suffered a heart attack. My brethren say that appellant would have to let them suffer and die without medical attention, for he could not lawfully take them to a doctor or to a hospital in his automobile because he was under the influence of intoxicating liquor.

About the only reason I know of for refusing to permit one to drive an automobile over a public highway of this state under such conditions is because a humanitarian jury might find the accused not guilty.

It must be remembered that the offense of drunken driving is not an offense against either the person or the property of

another. No individual suffers any injury in the mere violation of that law.

The offense is promulgated by the legislature as a protection of society. There are, however, times when the interest of society must be subordinated to the protection of individual rights.

Such is exemplified by the exemption from all traffic laws and regulations accorded ambulances and fire-fighting apparatus, which violate traffic laws in the course of duty. Such violation is excused because of the necessity arising from the need to aid some individual.

Indeed, the law recognizes the right of one to commit the crime of arson—that is, the wilful burning of the house of another—if such is necessary to save another house from fire (Art. 1310, P.C.).

It occurs to me that it is sound logic and reasoning to say that if an ambulance driver can violate the traffic laws in order to render needed assistance to an individual, the individual can do the same for himself for his own safety under similar conditions.

Of necessity, appellant's defense should have been submitted to the jury and the jury authorized to pass thereon.

I respectfully dissent.